IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-00207-CNS-SBP

SCOTT PATRICK MORRIS,

     Plaintiff,

v.

PAUL PATTERSON,
RYAN LONG,
RAMONA AVANT,
DR. RANDOLPH MAUL, and
COLORADO DEPARTMENT OF CORRECTIONS DENVER RECEPTION AND
DIAGNOSTIC CENTER,

     Defendants.

---

## ORDER

---

     This matter comes before the Court on the CDOC Defendants' Motion to Dismiss, filed by Paul Patterson, Ryan Long, Ramona Avant, Dr. Randolph Maul, and the Colorado Department of Corrections Denver Reception and Diagnostic Center (DRDC). ECF No. 27. The motion is fully briefed, and the Court finds that oral argument would not materially assist in its determination of this matter. For the following reasons, the Court GRANTS the motion.

## I. SUMMARY FOR PRO SE PLAINTIFF

     In your amended complaint filed March 24, 2023, you allege that DRDC officials housed you in a COVID-19 quarantine pod even though they knew that (i) you are immunocompromised due to your HIV-positive status, and (ii) you had actually tested

negative for COVID-19. Your amended complaint further alleges that while you were housed in the quarantine pod, you contracted COVID-19, became severely ill, and did not receive medical treatment for several days. You thus brought a number of civil rights and tort claims against Paul Patterson (DRDC Health Administrator), Ryan Long (DRDC Warden), Ramona Avant (DRDC Housing Captain), Dr. Randolph Maul (DRDC Chief Medical Officer), and DRDC itself.

The defendants in this case filed a motion to dismiss your claims on July 10, 2023. After considering all of the arguments raised in the motion, your response to the motion, and the defendants' reply, the Court is granting the motion to dismiss your claims as follows:

(1) Your claims for declaratory and injunctive relief are dismissed as moot, because you are no longer housed at DRDC;

(2) All § 1983 claims against Paul Patterson, Ryan Long, Ramona Avant, and Dr. Randolph Maul in their <u>official capacities</u> are dismissed without prejudice, because these defendants have sovereign immunity under the Eleventh Amendment;

(3) All § 1983 claims against Defendants Paul Patterson, Ryan Long, Ramona Avant, and Dr. Randolph Maul in their <u>individual capacities</u> are dismissed with prejudice, because these defendants are entitled to qualified immunity;

(4) All claims arising under the Americans with Disabilities Act and Rehabilitation Act are dismissed without prejudice; and

(5) Your state-law negligence claim against Defendants Paul Patterson, Ryan Long, Ramona Avant, and Dr. Randolph Maul is dismissed without prejudice, because the Court is declining to exercise supplemental jurisdiction over your state law claims.

Below, the Court will fully explain why it is granting the defendants' motion to dismiss your claims, and it will discuss the legal authority that supports this conclusion.

To clarify, for your claims that have been "dismissed <u>without</u> prejudice," this means

that you may refile the claims, assuming you can satisfy all procedural and jurisdictional requirements for doing so. *See Crowe v. Servin*, 723 F. App'x 595, 598 (10th Cir. 2018) ("A dismissal without prejudice just means that the plaintiff isn't barred from refiling the lawsuit within the applicable limitations period." (citations and quotations omitted)). However, for your claims that have been "dismissed <u>with</u> prejudice," this means that you may not file the claims again.

## II.  BACKGROUND[1]

Mr. Morris is in the custody of the Colorado Department of Corrections (CDOC). During the pendency of this case, he has been incarcerated in the Fremont Correctional Facility and Centennial Correctional Facility, both in Cañon City, Colorado.

Mr. Morris filed this action on January 23, 2023. *See* ECF No. 1. In light of Mr. Morris's prisoner status, then-Magistrate Judge Gordon P. Gallagher reviewed the original complaint under 28 U.S.C. § 1915A. On February 13, 2023, Judge Gallagher directed Mr. Morris to file an amended complaint to address a number of pleading deficiencies. *See* ECF No. 6. As directed, Mr. Morris filed his amended complaint on March 24, 2023. *See* ECF No. 10.

In his amended complaint, Mr. Morris alleges that—despite housing staff knowing that he is immunocompromised due to his HIV-positive status, and knowing that he had tested negative for COVID-19—he was placed in a COVID-19 quarantine pod at DRDC, where he contracted COVID-19, became extremely ill, and was not treated for the illness

---

[1] The following facts are drawn from Mr. Morris's Amended Prisoner Complaint. ECF No. 10. For purposes of this motion, the Court accepts as true, and views in the light most favorable to Mr. Morris, all factual allegations contained in the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

for days. More specifically, Mr. Morris entered DRDC custody on December 6, 2021. ECF No. 10 at 27. He submitted to COVID-19 testing on December 6, 8, 15, 20, and 22, 2021, testing negative each time. *Id*. However, on December 21, 2021, Mr. Morris was moved to Unit 3A, Cell 209, where COVID-19 quarantined inmates were housed. Mr. Morris alerted unidentified Unit 3 housing staff that he had tested negative for COVID-19, but he was told to remain there anyway. *Id.* at 27–28.

Mr. Morris alleges that as a result of living in the quarantine pod, he was exposed to and contracted COVID-19. ECF No. 10 at 28. He alleges that he tested positive for COVID-19 on December 29, 2021, was placed on quarantine status, and remained assigned to his cell in the quarantine pod. Mr. Morris became ill from the virus but was not seen by a medical professional until January 3, 2022—about five days after his positive test—and did not receive treatment until the following day, on January 4, 2022. *Id*. Mr. Morris does not specify the conditions or symptoms he experienced, but he contends that he "complained of severe pain while waiting for treatment for a week," *id*. at 20, and he recalls being "extremely ill with a serious threat to my well-being, life, physical and emotional health," *id.* at 29. Mr. Morris alleges that, "[a]s a result of Defendant C.D.O.C. at D.R.D.C. Medical Departments failure to provide need medical treatment, Plaintiff suffered further injury and physical and emotional pain and injury," *id.*, but he does otherwise allege how those "further injur[ies]" manifested themselves. Mr. Morris alleges that he is an "immune deficient at risk adult due to [his] HIV status of HIV Positive," and that at all relevant times, "all defendants were aware of [his] HIV status," *id.* at 18, 28–29.

Based on these facts, Mr. Morris brings claims against all named Defendants (in both their individual and official capacities) under the Fourth, Eighth, and Fourteenth Amendments. ECF No. 10 at 5. He further claims that Defendants were negligent, *id.* at 6, 30, and he very briefly asserts that they also violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA), *id.* at 6, 26.

Defendant Paul Patterson is the Health Services Administrator at DRDC. ECF No. 10 at 2, 7. According to Mr. Morris, Mr. Patterson is "generally responsible for ensuring provision of medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized treatment." *id.* at 7, although Mr. Morris does not allege that Mr. Patterson denied him any specific request for medical treatment outside the institution. Similarly, Defendant Dr. Randolph Maul is the "Chief Medical Officer and Pandemic Coordinator" for CDOC. *Id.* at 8. Dr. Maul is "in charge of COVID-19 related pandemic procedures and policy" for CDOC. *Id.*

Mr. Morris alleges that Mr. Patterson and Dr. Maul violated his Fourth Amendment rights by failing to provide adequate staff and medical care. ECF No. 10 at 16. Mr. Morris also contends that Mr. Patterson and Dr. Maul violated his Eighth Amendment rights by: (1) failing to provide adequate staff and medical care; (2) engaging in cruel and unusual punishment in their supervisory roles; and (3) having an inadequate policy that further caused pain and injury to Mr. Morris. *Id.* at 16. Mr. Morris also brings Fourteenth Amendment claims against Dr. Maul and Mr. Patterson for allegedly violating his rights to equal protection and due process in refusing "to provide any medication adequate and medical treatment for complications" of COVID-19, despite his HIV-positive status, his

5

COVID-19 diagnosis on December 29, 2021, and certain dental complications.[2] *Id*. at 20–21 (alleging "denial of due process" as to all Defendants in their personal and supervisory capacities).

Defendant Ryan Long is the DRDC Warden. ECF No. 10 at 3. Mr. Morris alleges that the Warden is "in charge of security, supervision, discipline of all correctional staff, and is responsible for reviewing all administrative grievances and disciplinary charges filed by D.R.D.C. inmates." *Id.* at 7. Similarly, Defendant Ramona Avant is the "housing captain at the D.R.D.C. [who] is in charge of housing, security, and discipline of correctional housing staff at D.R.D.C." *Id*. at 8. Mr. Morris alleges that Mr. Long and Ms. Avant violated his Fourth Amendment rights by failing to protect, failing to provide medical care in their supervisory roles, and failing to provide a safe place to be housed without risking exposure to COVID-19. *Id.* at 15. Mr. Morris further alleges that Mr. Long and Ms. Avant violated his Eighth Amendment rights by: (1) being deliberately indifferent to his serious medical needs; (2) housing him in a quarantine pod even though he had tested negative for COVID-19; (3) failing to provide adequate staff, training to staff, medical care, and accommodations; (4) putting him at risk by exposing him to COVID-19; and (5) engaging in cruel and unusual punishment by leaving him untreated for a serious medical condition that caused severe pain and injury. *Id.* at 15–16. He also alleges that Mr. Long and Ms. Avant violated his Fourteenth Amendment rights to equal protection and due process because he was exposed to COVID-19, *id.* at 16, and because Mr. Long failed

---

[2] On the same day that Mr. Morris filed this lawsuit, he also filed a separate action concerning dental treatment at DRDC, which is docketed as *Morris v. Patterson, et al.*, No. 1:23-cv-00205-GPG-SBP.

to train and failed to "provide a constitutionally adequate system of medical care" at DRDC, *id.* at 23–25.

Mr. Morris sues Defendant DRDC as "a state medical department" that provides "medical care and services to inmates," including him. ECF No. 10 at 8. Construing his allegations liberally, Mr. Morris appears to claim that DRDC maintains an informal custom of failing to train staff that resulted in his receipt of delayed and deficient medical care in violation of his Fourth, Eighth, and Fourteenth Amendment rights. *Id*. at 14-15, 17, 24; *see also id.* at 29 (asserting deliberate indifference on the part of DRDC). Mr. Morris alleges various that (1) DRDC maintains a custom and practice of delivering constitutionally inadequate medical care; (2) incidents of denying adequate medical care in DRDC are not properly investigated; and (3) correctional officers and medical personnel are not properly disciplined. *Id.* at 24–25. He contends that DRDC, through Mr. Long, "acquiesced in and/or ratified the custom of failing to provide a constitutionally adequate system of medical care to inmates." *Id*.

### III.  LEGAL STANDARDS

#### A.  Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), rendering them "duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction," *Wilderness Soc. v. Kane Cnty., 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). The "cases and controversies" clause

ensures that the parties retain a personal stake in the litigation.

"As a corollary to this case-or-controversy requirement, there must exist a dispute at all stages of review, not merely at the time the complaint is filed." *Moore v. Harper*, 600 U.S. 1, 14 (2023) (cleaned up). The "[m]ootness doctrine addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *Id*. (quotation marks omitted). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citation omitted).

### B. Rule 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the "court accepts as true all well pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991) (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a Rule 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible").

### C.  *Pro Se* Pleadings

In applying the above principles, this Court is mindful that Mr. Morris proceeds *pro se* and thus affords his filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). But the Court cannot and does not act as his advocate. *Hall*, 935 F.2d at 1110. The same procedural rules and substantive law apply to Mr. Morris as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *see also Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("*Pro se* status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'") (citation omitted).

### IV.  DISCUSSION

Defendants argue that Mr. Morris's claims must be dismissed for five reasons: (1) Mr. Morris's claims for declaratory and injunctive relief are moot because he is no longer confined at DRDC, and therefore the Court lacks subject matter jurisdiction over those claims; (2) the Eleventh Amendment bars his official capacity claims for monetary damages; (3) Mr. Morris fails to state plausible claims under the Fourth, Eighth, and

Fourteenth Amendments, as well as the ADA and the RA; (4) retaining supplemental jurisdiction over the-state law negligence claim is inappropriate; and (5) each Defendant is entitled to qualified immunity on the individual capacity claims. ECF No. 27 at 3. The Court addresses these arguments in turn.

### A.  Declarative and Injunctive Relief Claims

The primary focus of Mr. Morris's requests for declaratory relief is on his bout with COVID-19 and the alleged deficiencies in DRDC's response. ECF No. 10 at 34 (seeking five declarations with respect to DRDC's alleged violation of Mr. Morris's constitutional rights). He also requests an injunction requiring "Defendant C.D.O.C. D.R.D.C. medical department to provide any necessary therapy to [him] as ordered by a[n] outside doctor." *Id.* at 34–35.

#### 1.  Mootness

While Mr. Morris remains in CDOC custody, he had already transferred out of DRDC by the time he filed this action. The Court thus agrees with Defendants that Mr. Morris's claims for both declaratory and injunctive relief are moot.

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) (citation omitted). "The crucial question [in evaluating mootness] is whether granting a present determination of the issues offered . . . will have some effect in the real world." *Smith v. Beccera*, 44 F.4th 1238, 1247 (10th Cir. 2022) (citation omitted). "[A] case becomes moot 'when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision." *Ind v.*

*Colo. Dep't of Corrs.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (citation omitted). A litigant's interest in the outcome of the case must be "more than simply the satisfaction of a declaration that a person was wronged." *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004).

Thus, "a prisoner's release [from a facility] signals the end of the alleged deprivation of his constitutional rights, [and] an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him." *Jordan v. Sosa*, 654 F.3d 1012, 1027, 1029–30 (10th Cir. 2011) (cleaned up) (inmate's claims challenging policies rendered moot by his transfer to another facility); *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 751 (10th Cir. 2014) (inmate may not obtain prospective injunctive relief regarding "conditions at a facility where he is no longer housed and has not shown he is likely to be housed again"); *Nasious v. Colorado*, 495 F. App'x 899, 903 (10th Cir. 2012) ("[I]t is well-settled that a prisoner's transfer out of a prison moots his requests for . . . injunctive relief against staff at that prison.").

Applying these legal principles here, Mr. Morris's claims for declaratory relief are moot. "A claim for declaratory relief that does not settle some dispute which affects the behavior of the defendant toward the plaintiff is moot because it fails to seek more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (cleaned up; internal citations omitted). Put another way, a "declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not

simply to proclaim liability for a past act." *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008); *see also Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (holding the "legal interest" in the dispute "must be more than simply the satisfaction of a declaration that a person was wronged").

In this instance, a proclamation that Mr. Morris was wronged is precisely what he seeks in requesting "that the court . . . declare that the defendants have violated the constitutional and statutory rights of me." ECF No. 10 at 33; *see also id.* at 34. The foregoing well-established Tenth Circuit authority compels this Court to conclude that Mr. Morris's claims for declaratory relief are moot.

Neither would an injunction—in light of Mr. Morris's incarceration at a different CDOC facility—have any effect on DRDC's conduct toward Mr. Morris, rendering his claims for injunctive relief moot, too. *Jordan*, 654 F.3d at 1027. Mr. Morris's demand for injunctive relief also focuses on DRDC—he wants the DRDC medical department to provide him some type of unspecified "therapy," ECF No. 10 at 34-35—but that "penitentiary-specific" injunction would have no real-world effect because Mr. Morris is no longer incarcerated at DRDC. *See Jordan*, 654 F.3d at 1027 (recognizing that "courts have routinely dismissed such penitentiary-specific conditions-of-confinement claims as moot"); *Simpson v. Lewis*, No. 20-cv-01556-WJM-GPG, 2021 WL 467340, at *2 (Jan. 19, 2021) (recommending dismissal of claims for injunctive relief concerning prison COVID conditions because plaintiff was no longer at that facility), *report and recommendation adopted*, 2021 WL 463632 (D. Colo. Feb. 9, 2021). Thus, Mr. Morris's claim for injunctive relief is similarly moot.

Not to be deterred, in a very brief argument at the end of his response, Mr. Morris appears to invoke the capable-of-repetition-yet-evading-review exception to mootness, *see* ECF No. 43 at 11, which applies if two criteria are satisfied: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (quotation marks omitted); *see also Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (establishing the exception). For the reasons that follow, the Court finds that this "narrow" exception to mootness, which is to be utilized only in "exceptional situations," does not apply here, and that Mr. Morris has failed to meet his "'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Jordan*, 654 F.3d at 1034-35 (citations and quotation marks omitted); *see Patrick G. by & through Stephanie G. v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1200 (10th Cir. 2022) ("party asserting the exception . . . bears the burden of establishing that it applies"); *Ind*, 801 F.3d at 1215 (same).

Mr. Morris argues that DRDC is not only a diagnostic center but is also a transit hub for CDOC. He asserts that when he was previously transferred from CDOC's Fremont Correctional Facility to Centennial Correctional Facility in June 2023, he was sent through DRDC. He speculates that he will again be in DRDC during possible future transfers. ECF No. 43 at 11. In reply, Defendants argue that mere possibility does not suffice to meet the capable-of-repetition-yet-evading review exception. ECF No. 44 at 5–6. They point to the fact that Mr. Morris "does not state how long he was" previously incarcerated at DRDC,

and they further assert that "there is not a reasonable expectation that the same circumstances will arise again." *Id.* at 5. As support for the latter proposition, Defendants point to the fact that, at the time of the events of which Mr. Morris complains in the last days of December 2021 and the first days of January 2022, Colorado was still in a state of declared emergency concerning COVID-19, which was ended by the Centers for Disease Control and Prevention in May 2023. *See id.* at 5–6 & n.6.

Turning to the two criteria Mr. Morris must satisfy to succeed in establishing that his claims are capable of repetition but evading review, he first has not attempted to show that the challenged action was too short in duration to be fully litigated before it stopped. As Defendants note, Mr. Morris does not state how long he was housed at DRDC before he was transferred to another facility, and it was his burden to make that showing. However, even if Mr. Morris had established that his tenure at DRDC ended too quickly for his complaint concerning COVID-19 to be litigated, the capable-of-repetition exception still would not apply because he has not met his burden to show the existence of a "reasonable expectation" that he will be subjected to the same conditions again. *See Sanchez-Gomez*, 584 U.S. at 391.

As Defendants note, COVID-19 no longer presents the national public health emergency that it once did, and Mr. Morris does not assert (nor could he reasonably claim) that another pandemic is likely to occur while he remains in CDOC custody. Even if there were such a pandemic, *and* he were once again incarcerated at DRDC when that hypothetical pandemic struck, it appears exceedingly unlikely that Mr. Morris would again face the conduct about which he complains in this lawsuit at that unknown future date—

being placed in a "quarantine pod," while testing negative, and experiencing a delay in treatment for approximately a six-day period. To anticipate otherwise is a matter of sheer speculation. As the Tenth Circuit has emphasized, the Supreme Court "has never held that a mere physical or theoretical possibility was sufficient to satisfy the test stated in *Weinstein*. If this were true, virtually any matter of short duration would be reviewable." *Ind*, 801 F.3d at 1215 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)).

In sum, Mr. Morris has not shown that there is a "reasonable expectation" or a "demonstrated probability" that he will someday be embroiled in the same controversy with the same parties. *See id*. Having failed to demonstrate that his claims are capable of repetition but evading review, the Court dismisses his claims for declaratory and injunctive relief without prejudice as moot. *See, e.g.*, *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216-17 (10th Cir. 2006) (dismissal for lack of jurisdiction is without prejudice because the court "lack[s] jurisdiction to make a determination on the merits"); *Am. Cricket Premier League, LLC v. USA Cricket*, 445 F. Supp. 3d 1167, 1181 (D. Colo. 2020) (same).

### 2. Mr. Morris's "custom" allegations

Construing Mr. Morris's pleading liberally in view of his *pro se* status, the Court finds that his claims for declaratory or injunctive relief are overwhelmingly tied to the treatment he received during the COVID-19 pandemic. *See* ECF No. 10 at 34–35. However, Mr. Morris also briefly asserts that Mr. Long, in his official capacity as DRDC Warden, acquiesced to, or ratified a custom of, the DRDC medical department not properly investigating incidents of inadequate care and not holding staff accountable for

such incidents. *Id.* at 24–25.[3] To the extent these conclusory allegations may reflect an attempt to state a separate request that these "customs" somehow be eliminated, that claim also would be moot for the reasons set forth above. Nor would the capable-of-repetition-but-evading-review exception preserve such claims. It is a matter of sheer speculation that Mr. Morris will be housed again at DRDC and exposed to any supposed custom of providing inadequate medical care to DRDC inmates.

Regardless, any "custom" claim, which seemingly invokes *Monell v. Department of Social Services*, 436 U.S. 658 (1978), *see* ECF No. 43 at 3 (citing *Monell*), has no purchase here, where Plaintiff sues a *state* entity and *state* officials. "*Monell* only imposes liability on municipalities, not on state agencies such as CDOC (of which [DRDC] is a part). The Eleventh Amendment continues to protect state agencies from claims for damages." *Tantlinger v. Duchaine*, No. 14-CV-2503-WJM-KMT, 2016 WL 8201447, at *8 (D. Colo. Aug. 19, 2016) (cleaned up) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)). In any event, Mr. Morris has alleged no facts to support his conclusory allegations concerning a constitutionally inadequate "custom." He alleges no facts identifying the persons whom any Defendant here allegedly failed to train, or how any DRDC policy was constitutionally defective, or what policies should have been implemented in their stead.

---

[3] Mr. Morris mentions dental treatment at DRDC, only once and without explanation. As noted above, Mr. Morris's dental treatment is the subject of a separate lawsuit. He alleges no other incidents of inadequate medical care at DRDC.

**B.  Section 1983 Official Capacity Claims: The Eleventh Amendment**

Defendants argue that Mr. Morris's § 1983 official capacity claims for monetary damages are barred by the Eleventh Amendment.[4] ECF No. 27 at 7–8. The Court agrees.

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)); *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011) ("State sovereign immunity is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction."). Absent a waiver, states and their agencies are entitled to Eleventh Amendment immunity, regardless of the type of relief sought. *Id.* at 1252–53 (citation omitted). Colorado has not statutorily waived its Eleventh Amendment immunity in this context. *See Griess v. Colorado*, 841 F.2d 1042, 1044–45 (10th Cir. 1988). Nor did Congress abrogate state sovereign immunity through its promulgation of 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

More specifically, here, "the CDOC is an agency of the State of Colorado that has not expressly waived its sovereign immunity." *Hunt v. Colo. Dep't of Corrs.*, 271 F. App'x 778, 781 (10th Cir. 2008). And that immunity extends to state employees—like Mr. Patterson, Mr. Long, Ms. Avant, and Dr. Maul—acting in their official capacities. Because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," the Eleventh Amendment provides immunity "when [s]tate officials are sued

---

[4] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

for damages in their official capacity." *Kentucky v. Graham,* 473 U.S. 159, 166, 169 (1985); *see also Will*, 491 U.S. at 71 ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit agains the official's office," and "[a]s such, it is not different from a suit against the State itself"); *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) ("Neither states not state officers sued in their official capacities are 'persons' subject to suit under section 1983.")).

All of Mr. Morris's official capacity claims (and all claims against DRDC)—whether for injunctive, declaratory, or monetary relief—are dismissed without prejudice for lack of subject matter jurisdiction on the basis of Eleventh Amendment immunity. *See, e.g.*, *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216-17 (10th Cir. 2006) (dismissal is without prejudice if the court lacks subject matter jurisdiction); *Am. Cricket Premier League, LLC v. USA Cricket,* 445 F. Supp. 3d 1167, 1181 (D. Colo. 2020) (same).

**C. Section 1983 Individual Capacity Claims for Damages**

Defendants argue that Mr. Morris fails to state plausible claims under any of his constitutional theories, ADA, or RA. Defendants further argue that even if Mr. Morris states plausible constitutional violations, they are entitled to qualified immunity.

*1. Qualified Immunity*

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity is "an immunity from suit, rather than a mere defense to liability, it is effectively lost if a

case is erroneously permitted to go to trial." *Id*.; *accord Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Coresluna*, 595 U.S. 1, 142 S. Ct. 4, 7 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)) (internal quotation marks omitted); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (under the doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).

Always, "the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270 (10th Cir. 2022) (quotation omitted); *accord Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). The Court has "discretion to decide the order in which to engage the two prongs of the qualified immunity standard." *Andersen v. DelCore*, 79 F. 4th 1153, 1163 (10th Cir. 2023) (cleaned up). "The record must clearly demonstrate the plaintiff has satisfied his heavy

two-part burden; otherwise, the defendants are entitled to qualified immunity.'" *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) (citation omitted). If the court "conclude[s] that the plaintiff has not met his burden as to either part of the two prong inquiry, [the court] must grant qualified immunity to the defendant." *Id.* (citation omitted).

An official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotation omitted).

The Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (citation omitted). While a plaintiff is not required to cite a case with "identical facts" to demonstrate a clearly established right, *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020), clearly established law must place the constitutional issue "beyond debate." *Mullenix*, 577 U.S. at 16 (quotation omitted). It is the plaintiff's obligation to cite cases that satisfy the burden

of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010).

### a. Fourth Amendment

Mr. Morris alleges a right to protection, safe housing, and adequate medical care under the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons [and] houses . . . against unreasonable searches and seizures, shall not be violated . . . but upon probable cause." U.S. Const. amend. IV. Mr. Morris does not cite any legal authority that the Fourth Amendment provides any of the rights that he alleges. Nor is this Court aware of any such authority. To the contrary, a prison cell is not equivalent to a home under the Fourth Amendment. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"). And the Fourth Amendment protection of the person from unreasonable search or seizure has been applied to prisoners only as to their limited right of privacy. *See, e.g., Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002). Indeed, Mr. Morris does not appear to address the Fourth Amendment in his response brief. *See generally* ECF No. 43. The Court concludes that he fails to state a claim under the Fourth Amendment. Defendants are thus entitled to qualified immunity on the Fourth Amendment claims, and these claims are dismissed with prejudice.[5]

---

[5] *See, e.g., Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (instructing district court to dismiss based on qualified immunity "with prejudice"); *Lybrook v. Members of the Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1341–42 (10th Cir. 2000) (affirming district court order granting motion to dismiss with prejudice on qualified immunity grounds); *Vreeland v. Olson*, No. 20-cv-02330-PAB-SKC, 2021 WL

*b. Fourteenth Amendment*

The Court next turns to Mr. Morris's claims under the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment provides no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process." *Carrier v. Lundstedt*, No. 13-cv-02933-PAB-CBS, 2014 WL 8103198, at *5 (D. Colo. Dec. 22, 2014), *report and recommendation adopted*, No. 13-cv-02933-PAB-CBS, 2015 WL 1041835 (D. Colo. Mar. 4, 2015); *see Onyx Properties LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1043 (10th Cir. 2016) ("Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision").

Mr. Morris does not appear to allege that he was denied procedural due process in being assigned to the quarantine pod or in the delay of his medical care. It appears that he brings this claim for a substantive due process violation, the standard for which is "whether the challenged government action shocks the conscience of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (quotations and citations omitted). Negligence is not sufficient to shock the conscience. *Id*. at 1184. In addition, "'a

---

4237269, at *5 n.7 (D. Colo. Sept. 16, 2021) ("The Court will dismiss the claim against Olson and Reed [brought by a pro se plaintiff] with prejudice because they are entitled to qualified immunity).

plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.'" *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (citation omitted). "Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000).

In this case, Mr. Morris's allegations—that Defendants housed him in COVID-19 quarantine pod, despite knowing of both his immunocompromised status and his negative COVID-19 test results—do not shock the conscience. Certainly, it was well known by December 2021 that persons with immune deficiencies had heightened vulnerability to the virus, and housing an immunocompromised inmate in close contact with inmates who were COVID-19 positive was not ideal. But state prison staff have broad discretion in assigning inmates to cells. *Quick v. Mann*, 170 F. App'x 588, 590 (10th Cir. 2006) (citation omitted). While in Mr. Morris's view staff should not have assigned him to the quarantine pod, the Court cannot reasonably infer that his assignment to the quarantine pod was intentional conduct that served no governmental purpose. Indeed, Mr. Morris does not allege an absence of governmental purpose in assigning him to the quarantine pod.

Nor does the delay of medical care for several days after Mr. Morris became ill from COVID-19 shock the conscience. To the extent another constitutional amendment applies more directly than the Fourteenth Amendment, the claim cannot also be brought under the Fourteenth Amendment. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government

behavior, 'that Amendment . . . [as opposed to the Fourteenth Amendment,] must be the guide for analyzing these claims.'" *Becker v. Kroll*, 494 F.3d 904, 918 (10th Cir. 2007) (citation omitted). Here, the Eighth Amendment encompasses prisoner claims for deliberate indifference to serious medical needs. Mr. Morris in fact brought an Eighth Amendment claim, and the Court will address the delay of medical care under that amendment only.

In short, Mr. Morris fails to allege that Defendants violated his substantive due process rights under the Fourteenth Amendment. As these claims fail the first prong of qualified immunity, Defendants are entitled to dismissal of these claims with prejudice.

### c. Eighth Amendment

As for Mr. Morris's claims under the Eighth Amendment, the Eighth Amendment protects against the government's infliction of cruel and unusual punishment. U.S. Const. amend. VIII. "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *accord Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985).

To establish a prison official's constitutional liability based on that official's deliberate indifference, a plaintiff must satisfy both objective and subjective components of the deliberate-indifference test. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires the plaintiff to allege objective facts that demonstrate that the constitutional deprivation was "sufficiently serious." *Mata*, 427 F.3d at 751 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component

requires the plaintiff to sufficiently allege Defendants' culpable state of mind, i.e., to establish that Defendants knew he faced a substantial risk of harm yet disregarded that risk. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations and citation omitted). "[A] prison official cannot be liable 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837). A culpable state of mind may be demonstrated where "prison officials prevent an inmate from receiving treatment or deny [the inmate] access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211.

Specifically, if "the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care." *Id.* "The typical gatekeeper case involves non-medical personnel, such as prison guards, who fail to request medical assistance on behalf of a prisoner." *Oakley v. Phillips*, No. 15-cv-01004-CMA, 2015 WL 5728734, at *8 (D. Colo. Sep. 30, 2015), *appeal dismissed* (10th Cir. Jan. 27, 2016).

Importantly, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Therefore, the complaint must contain well-pleaded, non-conclusory

facts which plausibly show that each named defendant was personally responsible for the alleged deprivation of his constitutional rights. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Conclusory allegations of personal participation are insufficient to state a plausible claim. *Gray v. Sorrels*, 744 F. App'x 563, 568 (10th Cir. 2018). "Supervisory responsibilities or abstract authority over subordinates alone is not enough to show personal participation." *Weiss v. Vasquez*, No. 21-cv-01533-CNS-NRN, 2022 WL 5241885, at *4 (D. Colo. Oct. 6, 2022), *report and recommendation adopted*, 2023 WL 142531 (D. Colo. Jan. 10, 2023), *aff'd sub nom. Weiss v. Town of Elizabeth*, No. 23-1042, 2023 WL 6389042 (10th Cir. Oct. 2, 2023).

To state claims based on an officer's supervisory conduct, the plaintiff must "provide a sufficient factual basis to make an affirmative link between the alleged constitutional violation" and that officer's supposed "participation, control, direction, or failure to supervise." *Pittman v. Williams*, No. 22-1441, 2023 WL 6564910, at *2 (10th Cir. Oct. 10, 2023) (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)); *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*") (collecting cases).

For their present motion, Defendants do not challenge that Mr. Morris plausibly alleges the objective component for his Eighth Amendment claims. ECF No. 27 at 11; *see, e.g., Nellson v. Barnhart*, No. 20-CV-00756-PAB, 2020 WL 3000961, at *8 (D. Colo. June 4, 2020) (on motion for preliminary injunction, assuming the risk of COVID-19 infection met the Eighth Amendment's objective component). Defendants instead argue

that Mr. Morris does not plausibly allege the subjective element, that they each "knowingly failed to take action to protect Morris from the risks of COVID-19." ECF No. 27 at 11.

In this case, Mr. Morris does not sue the individuals who placed him in the quarantine pod and failed to provide medical care for several days after he became ill. He instead sues Mr. Long, Ms. Avant, Dr. Maul, and Mr. Patterson—the first three in their supervisory roles, and the latter as the Health Services Administrator in charge of scheduling medical appointments and obtaining outside medical treatment for inmates.

As to Mr. Long, Mr. Morris does not allege that he, as DRDC Warden, directly supervised the housing officers, since that was Ms. Avant's job as housing captain. Nor does Mr. Morris allege that Mr. Long was aware that any housing officers assigned him as an immunocompromised, COVID-19 negative inmate to the quarantine pod. Nor does Mr. Morris allege that Mr. Long directly supervised the medical staff or knew that they were not providing him with care while he was extremely ill and in severe pain. The Eighth Amendment claim against Mr. Long thus fails for lack of personal participation. *See, e.g., Womble v. Chrisman,* 770 F. App'x 918, 924-25 (10th Cir. 2019) (prisoner's claim against warden for facility's failure to screen inmates for mental and physical illness before sending to housing unit, causing prisoner to be exposed to communicable diseases, failed for lack of affirmative link); *Weiss*, 2022 WL 5241885, at *5. Mr. Long is thus entitled to qualified immunity on this claim.

Similarly, as to Dr. Maul, Mr. Morris does not allege that he directly supervised either the housing officer in question (again, that was allegedly Ms. Avant's job) or the medical staff who did not provide care. Nor does Mr. Morris allege that Dr. Maul otherwise

personally knew of Mr. Morris's situation in DRDC. The Eighth Amendment claim against Dr. Maul also fails for lack of personal participation. He too is entitled to qualified immunity.

The claim fails as to Mr. Patterson as well. Mr. Morris does not allege that Mr. Patterson failed to schedule a medical appointment for him or otherwise declined to act in his gatekeeper role as a Health Services Administrator. Mr. Morris also does not allege that Mr. Patterson denied any requests for outside medical treatment. The Eighth Amendment claim against Mr. Patterson fails for lack of personal participation. He is thus entitled to qualified immunity as well.

Last, as to Ms. Avant, Mr. Morris alleges that she directly supervised the housing officers who placed him in the quarantine pod despite being immunocompromised and testing negative for COVID-19. Liberally construed, he also alleges that Ms. Avant was aware that her staff were doing so. Although her role as DRDC's housing captain renders her the likeliest candidate for § 1983 liability under the Eighth Amendment, the Court finds that this claim fails against her, too. That Ms. Avant supervised DRDC's housing officers falls far short of any allegation that she personally participated in Mr. Morris's movement to a hazardous housing arrangement. And as explained above, "[s]upervisory responsibilities or abstract authority over subordinates alone is not enough to show personal participation." *Weiss*, 2022 WL 5241885, at *4. To conclude otherwise would allow the Eighth Amendment claim against Ms. Avant to proceed essentially under a theory of *respondeat superior*, which is plainly not permitted under the Supreme Court's § 1983 jurisprudence. *See Iqbal*, 556 U.S. at 676. As such, Ms. Avant is also entitled to qualified immunity.

In short, Mr. Morris does not plausibly allege violations of the Eighth Amendment, and all Defendants are therefore entitled to qualified immunity on this claim.

### d.  The ADA and RA

Mr. Morris also sues Defendants for injunctive relief and damages under the ADA and RA. ECF No. 10 at 6. His complaint refers variously to "adequate accommodations," "disabilities," and the denial of "necessary accommodations." *Id.* at 5, 19, 26.[6] Defendants argue that Mr. Morris does not plausibly allege a claim under the ADA or RA because he does not identify any disability or what accommodations were necessary and denied. ECF No. 27 at 16–17. In his response, Mr. Morris does not attempt to address this claim. *See generally* ECF No. 43.

Mr. Morris's ADA or RA claim fails for several reasons. First, Mr. Morris's request for injunctive relief under this claim is moot, as explained in Section III.A above. Second, Mr. Morris's claim for damages against Defendants in their individual capacities fails because individuals are not suable under the ADA. *Smith v. Glanz*, 662 F. App'x 595, 597 (10th Cir. 2016). Third, the entire claim (including his claim for damages against Defendants in their official capacities) fails as wholly devoid of factual content necessary to support the elements. Title II of the ADA states, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II

---

[6] At times, it appears that Mr. Morris also alleges a need for accommodations under the Eighth Amendment. *Id.* at 5. He also checked the box that the Amended Complaint is brought only under 42 U.S.C. § 1983. *Id.* at 3. But Section 1983 and the Eighth Amendment do not address disabilities or accommodations.

applies to state prisoners. *Penn. Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998).

"To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007). *See also Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1276 (10th Cir. 2022) (citing *Robertson*). Because the required showings under the ADA and the RA are substantially similar, the same analysis generally applies to Mr. Morris's claim under each. *See, e.g.*, *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 726 (10th Cir. 2011) (noting that the "antidiscrimination language in § 12132 . . . parallels § 504 of the Rehabilitation Act"); *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n.7 (10th Cir. 1998) ("The ADA defines disability in essentially the same terms as the Rehabilitation Act").

Here, Mr. Morris does not allege any facts to identify what disability he had, which is part of the first element. Similarly, he does not allege what he was excluded from participating in, or what benefit he was denied in DRDC; or that the exclusion or denial was by reason of a disability. The Court liberally construes Mr. Morris's pleading, but it cannot act as his advocate. Mr. Morris fails to state an ADA or RA claim, and it is therefore dismissed.

### e. Negligence

As to Mr. Morris's claim for negligence under state law, Defendants argue that (1) negligence does not suffice for § 1983 claims; (2) if the court dismisses all of the federal claims, it should not retain supplemental jurisdiction over this claim under 28 U.S.C. § 1367(c); and (3) they are immune from tort liability under the Colorado Governmental Immunity Act (CGIA). ECF No. 27 at 18. As to the first point, Mr. Morris recognizes that negligence is a tort claim under state law, not a basis for § 1983 claims.[7] As to the second point, because the Court is dismissing all of Mr. Morris's federal claims, the Court agrees with Defendants that its exercise of supplemental jurisdiction over Mr. Morris's sole state-law claim is inappropriate. *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (when a district court dismisses all federal claims, in its discretion, "the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims") (emphasis added); *see also* 28 U.S.C. § 1367(c)(3). Finally, in light of the Court's disinclination to exercise supplemental jurisdiction over the negligence claim, the Court does not reach or address Defendants' CGIA argument.

Accordingly, Mr. Morris's negligence claim is dismissed without prejudice.

---

[7] In his response brief, Mr. Morris assumes that the Federal Tort Claims Act applies to his negligence claim, but that statute only concerns actions against the United States, i.e., the *federal* government, not *state* agencies or officials. 28 U.S.C. § 2674. *See Brownback v. King*, 592 U.S. 209, 210 (2021).

## V.  CONCLUSION

Consistent with the foregoing analysis, the Court GRANTS the CDOC Defendants'

Motion to Dismiss, ECF No. 27, as follows:

(1) All claims for declaratory and injunctive relief are DISMISSED AS MOOT;

(2) All § 1983 claims against Defendants Paul Patterson, Ryan Long, Ramona Avant, and Dr. Randolph Maul in their official capacities are DISMISSED WITHOUT PREJUDICE pursuant to the Eleventh Amendment;

(3) All § 1983 claims against Defendants Paul Patterson, Ryan Long, Ramona Avant, and Dr. Randolph Maul in their individual capacities are DISMISSED WITH PREJUDICE pursuant to the doctrine of qualified immunity;

(4) All claims arising under the Americans with Disabilities Act and Rehabilitation Act are DISMISSED WITHOUT PREJUDICE;

(5) The state-law negligence claim against Defendants Paul Patterson, Ryan Long, Ramona Avant, and Dr. Randolph Maul is DISMISSED WITHOUT PREJUDICE.

(6) The Court directs the Clerk of Court to close this case.

Dated this 29th day of March 2024

BY THE COURT:

Charlotte N. Sweeney
United States District Judge